# Stephens *v.* Moore.

*Statutory Action of Ejectment.*

1. *Adverse possession; does not run against the General Government.* Adverse possession never runs against the government of the United States ; and until a patent is issued for public land, which has been entered, the possession of a third person can not be adverse to the entryman.

2. *Ejectment; plaintiff must have title to maintain suit.*—Before an action of ejectment can be maintained against one claiming title, the plaintiff must show that he had a better title to the property than the defendant ; and where the plaintiff fails to show that he has title, either by written muniment or right of adverse possession, he can not maintain ejectment against one in possession, whether the latter's title be valid or not.

APPEAL from the Circuit Court of Marshall.
Tried before the Hon. J. A. BILBRO.
This was a statutory action of ejectment, brought by

the appellee, Nellie Moore, against the appellant, Henry Stephens, to recover a certain 40-acre tract of land, specifically described in the complaint, and was instituted on August 26, 1895.

Both the plaintiff and the defendant claimed to have derived title to the property in controversy from the same source. The facts showing the claims of the respective parties are sufficiently stated in the opinion.

Among the charges requested by the defendant, and to the refusal to give each of which the defendant separately excepted, was the following: "The court charges the jury that if they believe the evidence, they will find for the defendant." There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error, among the other rulings of the trial court to which exceptions were reserved, the refusal of the court to give the general affirmative charge requested by him.

O. D. STREET, for appellant.—The doctrine that a deed to land which is held adversely by a third party is void, does not apply when the adverse possessor becomes an active party in such a way as to enable him to recover the land from the grantee in such deed upon the strength of his own title.—*Johnson v. Cook,* 73 Ala. 537; *Bernstein v. Humes,* 60 Ala. 600; Sedgwick & Wait on Trial of Title to Land, § 190.

The plaintiffs in this case did not show a title by adverse possession.—*Potts v. Coleman,* 67 Ala. 221; *Burrus v. Meadors,* 90 Ala. 140; *Collins v. Johnson,* 57 Ala. 304. The possession could not have been ripened into title until May 4, 1895, since the adverse possession did not commence to run until the patent was issued to Richardson on May 4, 1895. Adverse possession does not run against the general government.—*Wiggins v. Kirby,* 106 Ala. 262; *Wagnon v. Fairbanks,* 105 Ala. 527.

In addition to all this, at the time of the making of the deed, there was a re-entry and purger of the disseizin by Richardson so far at least as to give operation to the deed.—*Brickett v. Spofford,* 14 Gray 514; *Oakes v. Marcy,* 10 Pick. 195; *Knox v. Jenks,* 7 Mass. 488; *Warner v. Bull,* 13 Metc. 1.

LUSK & BELL, *contra.*—If plaintiff went into possession of the land under an oral agreement that it was to

[Stephens v. Moore.]

be hers, claiming it as hers, then this was an adverse possession.—*Vandiver v. Stickney*, 75 Ala. 225 ; *Collins v. Johnson*, 57 Ala. 304.

2. Any deed made by Richardson while Mrs. Moore was in possession of the land, claiming it as hers, would, as to her, be void.—3 Brick. Dig., 18, § 51. It was not even necessary that Mrs. Moore's possession should have been under color of title or under color of right. Nor is it even necessary that Stephens should have had notice of her claim.—3 Brick. Dig., 18, § 55 ; *Humes v. Bernstein*, 72 Ala. 546 ; *Bernstein v. Humes*, 71 Ala. 260.

HARALSON, J.—It is undisputed, that no patent to the land in suit was issued by the government of the United States until May 4th, 1885, when one issued to S. P. Richardson for the entire quarter section of which the land in this suit is a part ; that prior to that time, in 1870, Richardson had taken steps to enter the quarter section, and shortly thereafter, he either made a verbal gift of the forty acres sued for to the plaintiff, who was his mother, or he promised her he would give it to her at some time in the future, which was not fixed, or else he gave her the use and occupation of it. so long as he might own the tract, and as to what he did in this respect the evidence was conflicting. There was no writing between them. It is also shown that the land was uncleared until some time in 1884, when about twenty acres of it were cleared up and a house erected on it by Madison Moore, the husband of appellee ; that a fence was built, which included the house and the cleared land, and about sixteen other acres of uncleared land ; that the inclosure took in a part of another forty acres of the same quarter section, and on which said S. P. Richardson had built a house and resided ; that said Madison Moore, in 1884, made a crop on the land he cleared that year, and a few days before Christmas, 1885, he and the plaintiff moved into said house and resided there, together, until March 1st, 1895, when defendant, Stephens, went into possession. It is stated in the bill of exceptions, that there was no evidence that plaintiff exercised any acts of ownership over any part of the forty acres, except that inclosed within said fence. It further appears, that on the 25th September, 1893,

[Stephens v. Moore.]

Richardson sold, and by proper deed conveyed to defendant the whole of said quarter section, including the lands sued for, and he was put in possession of the house and premises on said land, where Richardson had theretofore resided, and defendant has continued since to reside there. The defendant's evidence tended to show, that after his purchase of the land, plaintiff and her husband attorned to him; and her husband, with the approval of plaintiff, rented the land from defendant, for the year 1894, at the agreed price of $15. The evidence on the part of plaintiff was in conflict with this evidence, so far as it tended to show that she consented to the renting of the land by her husband, or that she attorned to defendant. It appears that at the end of the year, the plaintiff and her husband refused to yield possession, and the defendant instituted unlawful detainer proceedings before a justice of the peace against plaintiff's husband for the recovery of the possession of the land, and obtained judgment therefor; that a writ of possession, addressed to any lawful officer was issued by the justice of the peace, and placed by him in the hands of one Arnett, as there was no constable in the precinct, with instructions to execute it, the deputation being oral, and under this writ the said Moore and his wife were removed a few days before the 1st March, 1895, and the defendant placed in possession. As to whether the claim of possession by plaintiff was adverse to the owner, or not, the evidence was conflicting. In 1888, as appears, Richardson, living on a part of it, mortgaged the entire quarter section to a loan company, to secure a loan of $300.

1. Until May 4, 1885, the date of the issuance of the patent to Richardson, the title to the land in suit remained in the United States government. Before that date, therefore, no adverse possession could begin to run in favor of, or against any one.—*Wiggins v. Kirby*, 106 Ala. 265; *Wagnon v. Fairbanks*, 105 Ala. 257.

2. It is undisputed, that the husband of the plaintiff, Madison Moore, after the defendant purchased from Richardson—on the 20th September, 1893—rented the land from defendant for the year 1894, and under such renting cultivated the same for that year, and attorned to defendant. The evidence of the plaintiff, as to this transaction, went no farther than a denial of her hav-

[Stephens v. Moore.]

ing consented to this renting by her husband and of her attornment to defendant, but was not in dispute of the fact, which the evidence of defendant, without conflict, tended to show, that her husband had rented the land from defendant and had cultivated it under such renting. Nor did she show, that this renting and attornment by her husband was done without her knowledge, or that she did or said anything to forbid or oppose it; but from the evidence it is deducible, without conflicting inference, that she knew of such renting and silently acquiesced, without raising dissent.

3. Without reference to the defendant's title, whether it was valid against plaintiff or not, because he acquired it, as claimed, while plaintiff was in possession claiming adversely to the vendor of defendant, still, defendant being in possession, the plaintiff can not recover against him without showing a better title to the land than his. His possession was sufficient to defeat her mere claim to the land, without title to support it.—3 Brick. Dig., 325, §§ 30 and 49. If the plaintiff's possession, at the time Richardson conveyed to defendant, was not adverse to Richardson, as to which the evidence conflicts, the defendant has, of course, presented a perfect title to the land; but as we have said, the plaintiff has brought to light no claim of title or possession which entitles her, under the evidence, to dispossess the defendant. Her possession could not have been adverse to any one, before May 4, 1885, and if adverse after that date, it did not continue unbroken for ten years before the defendant gained possession, on the 1st March, 1895.

The general charge should have been given for the defendant.

Reversed and remanded.